Chaffe, Bro. & Son vs. Oliver, Administrator.

---

### No. 992.

### JOHN CHAFFE, BRO. & SON VS. WILLIAM T. OLIVER, ADMINISTRATOR.

The administrator of a married woman's succession has the right to show, without pleading fraud and injury, that an obligation contracted by her during her lifetime and upon which her estate is sued, was for the purpose of paying her husband's debt and, therefore, null and void.

APPEAL from the Fifth District Court, parish of Richland.   *Gunby*, judge *ad hoc.*

---

*Bayne & Renshaw* and *Wells & Williams* for Plaintiffs and Appellants:

Testimony before the clerk is subject to such objections as may be made at the taking thereof, and also subject to such other objections as may be made to the introduction thereof on the trial.   R. R. S. § 491.

The administrator of an estate represents the creditor as their trustee.   2 An. 923; 4 An. 169; 21 An. 149.

To set aside an alleged illegal contract, the administrator (or creditor) must allege and prove that said contract was in fraud of and to the injury of the creditor.   R. C. C. 1878; 11 Rob. 494; 2 Rob. 101; 1 Rob. 528; 19 An. 290; 6 An. 495.

A sale by an intestate can be attacked only by heirs, legatees or creditors, whose debts existed at the time of the decease.   The sale cannot be attacked by the administrator, unless creditors have been injured.   6 An. 495.

An act or contract by the wife, whereby she is rendered liable for her husband's debts, is affected with a relative nullity only, but exists unless repudiated by those in whose interest the nullity is established.

Her disability renders such contracts voidable.   3 An. 426.

Illegal contracts affecting minors' property may be ratified.   3 An. 536; 3 An. 329–330.   So may those affecting the property of married women.

A contract made by a *femme couverte* may be ratified by her after she becomes a *femme sole.* 4 La. 328; 7 La. 76.

A person who becomes capable of disposing of property thereby becomes capable of ratifying any alienation already made of the property.   8 Rob. 466.

To revoke an illegal transfer the transferree should be sued.

A married woman authorized by her husband may sell her separate property.   She may make such use of the proceeds as she desires.

*Potts & Hudson* and *Chs. J. Boatner* for Defendant and Appellee:

First—A wife cannot bind herself or her property for the debt of her husband.   C. C. 2398

Second—The law forbidding such contracts is prohibitory.   14 An. 165; 9 L. 590.

Third—Whatever is done in contravention of a prohibitory law is void.   C. C. 12.

Chaffe, Bro. & Son vs. Oliver, Administrator.

Fourth—When the law forbids contracts of a particular kind its provisions cannot be evaded by giving to those contracts a different form from that forbidden by law, when in substance the contract is that prohibited. 5 N. S. 54, 431 ; 7 N. S. 344; 8 N. S. 692 ; 4 R. 510 ; 12 R. 84 ; 12 An. 852.

Fifth—Married women are never estopped when sought to be held liable for the debts of their husbands. 14 An. 168; 16 An. 11.

Sixth—Whatever be the form of the contract its true nature and intent may be inquired into. 12 An. 852; 12 R. 84 ; 1 An. 429 ; 2 An. 756 ; 14 An. 169; 4 R. 508.

Seventh—The heirs have all the rights of the deceased. C. C. 945 ; 7 R. 183 ; 15 L. 528 ; 19 An. 75.

Eighth—The administrator represents the heirs as well as the creditors.

The opinion of the Court was delivered by

FENNER, J. Plaintiffs sue the defendant, as administrator of his deceased wife, Mrs. S. J. Oliver, upon two notes, secured by mortgage and vendor's privilege upon immovable property belonging to her estate.

Defendant, admitting the signature and execution of the notes by the deceased, opposes the demand upon allegations covering, substantially, the following facts: .

Oliver and his wife were separate in property; and·each had separate accounts with the New Orleans firm of I. W. Arthur & Co., Oliver being in 1871, a debtor of that firm, and his wife a creditor thereof.

On May 26th, 1871, Mrs. Oliver was induced by her husband to execute an act of sale of certain real estate belonging to her to I. W. Arthur, for a pretended consideration; the sole object being to place the title in the hands of I. W. Arthur & Co. as security for any indebtedness which Oliver, the husband, might then or thereafter owe them.

The property remained in possession of Mrs. Oliver, who paid the taxes by draft on Arthur & Co., by them paid and charged to her account. Subsequently, in 1872, under arrangement between Oliver, Arthur & Co. and the present plaintiffs, it was agreed that the latter should be placed in the shoes of Arthur & Co.; and that, upon plaintiffs' accepting the drafts of Oliver, in favor of Arthur & Co., for the amount of Oliver's indebtedness to the latter, Arthur should make over to plaintiffs the title to the property. This was accordingly done. Arthur conveyed the property to plaintiffs, "with no personal warranty," in consideration of the acceptances agreed on. Plaintiffs opened an account with Oliver and charged him with the proceeds of the acceptances, discounted by themselves. Plaintiffs were informed that Arthur & Co. held the title from Mrs. Oliver solely as security for her husband's debt; and accepted the title from Arthur merely as collateral security for the same debt, represented by their acceptances of Oliver's drafts. Although the plaintiffs held this title for a considerable period, the property remained in possession of Mrs. Oliver, who paid the taxes on it.

64

Thereafter, plaintiffs placed the title back in the name of Mrs. Oliver, by a sale to her, "with no personal warranty," for a consideration of $5000, evidenced by her two notes of $2500 each, secured by mortgage and vendor's privilege, being the notes now sued on.

The plaintiffs credited the amount of these notes (discount off) to W. T. Oliver, and held the same as security for Oliver's debt to them, and to be enforced only for the amount which he might owe them.

Such are the facts of these transactions, as alleged in the answer and clearly established by significantly uncontradicted evidence, received over the objection of plaintiff's counsel to its admissibility.

If the evidence was properly received and is entitled to consideration, it is obvious that the transactions recited were, from beginning to end, a mere contrivance, to which all the parties were knowingly privy, by which the wife and her property were to be bound for her husband's debts, in violation of the prohibition of Art. 2398 of the Civil Code. It is settled, to epitomize our jurisprudence, that such transactions cannot be sustained; that the wife and her legal representatives cannot be bound thereby; that she may attack and annul them, or may defend against them; that she is not estopped by her own acts in aid of the transactions, which are presumed to be done under marital influence; that, whatever the form of the contract, its true character may be inquired into and laid bare; and that, in her assault upon even authentic acts, she is not confined to counter-letters and interrogatories on facts and articles, but may resort to parol evidence to establish their true nature and purpose. See on these different points: 14 An. 169; 16 An. 11; 5 An. 572; 2 An. 756; 12 An. 852; 12 R. 84; 1 An. 429; 4 R. 508;

Of course, these doctrines have their limitations, when they involve the rights of innocent third persons, who have acted, in good faith, upon the apparent validity of such transactions. With these limitations we are not here concerned.

The objection to this evidence, as presented by the bill of exceptions, is based on the idea that the administrator represent the creditors alone; that the defense is, in effect, an action by, or in behalf of, creditors to revoke the contracts of their debtor, and cannot be maintained in the absence of allegations of fraud and injury to creditors.

We find no force whatever in the objection. It is manifest that the administrator represents the heirs as well as creditors, and is entitled, and even bound, to bring all actions and make all defenses, which the deceased could make. As representative of the creditors, an administrator may bring some actions which the deceased could not have brought; and, in such case, the allegations of fraud and injury to creditors would be essential. This, however, is not such a case, and those allegations were unnecessary.

The evidence was properly received, and it establishes a conclusive defense against plaintiffs' claim.

Defendant claimed, in reconvention, an amount due by plaintiffs on the separate account of deceased.

The judge a quo did not err in confining her claim to the amount shown on the account rendered to her by plaintiffs, which she received, and, so far as the evidence shows, never objected to.

The judgment is, therefore, affirmed at appellant's cost.