TALIAFERRO, Judge.
The contest involved in this litigation tenders for decision the ownership of one-twelfth of the minerals in, on, under or which may be produced from the following described tract of land in Claiborne Parish, Louisiana, to-wit: “An undivided % interest in and to the SE 14 of the SE $4 and 15 acres on the South side of the SW % of the SE 14 of Section 19; and the E % of the NE % and 25 acres on the North side of the NW % of the NE %, North of a line drawn from the SE corner and running NW in Section 30, all in Township 22 North, Range 4 West and containing 162 acres more or less, Claiborne Parish, Louisiana.”
On December 23, 1937, Will Taylor, plaintiff herein, acquired by purchase from one Cleveland Robertson, an undivided one-sixth (Ve) interest in and to the parcels of land constituting said tract. The sale to him is in notarial form, being signed by both vendor and vendee. Following the vendee’s name therein appear these typed words, to-wit: “whose wife is Thelma Taylor, nee Glover.” He was not at that time the husband of Thelma Glover. He had previously married Millie A. Davis, from whom he had not been legally divorced, but they were then living separate and apart. Plaintiff did, however, on January 6, 1939, procure absolute divorce from Millie and on February 13, 1940, contracted marriage with Thelma. That union went on the rocks also, culminating in final divorce on February 12, 1943. Both marriages were celebrated in Claiborne Parish, where both divorces were sued for and obtained.
On November 28, 1946, a date subsequent to both divorce judgments, plaintiff executed an oil and gas lease to one L. FI. Pratt that covered the land he had acquired from Cleveland Robertson.
On November 12, 1947, Thelma Glover, then the wife of Bill Turner, while a patient in the Shreveport Charity Hospital, signed a co-lessor’s agreement wherein she joined and concurred in'the lease to Pratt and ratified the same. On the following day she signed an instrument wherein she declared that for $100.00 cash she sold and conveyed to W. W. Lincoln one-twelfth (¥12) of “the oil, gas and other ■minerals in and under and that may be produced from” said land.
On January 2, 1948, W. W. Lincoln- sold and conveyed to Bryon H. Schaff one-half (%) of the mineral rights acquired by him through the sale from Thelma Turner, or ¥24 of the whole.
While the public records, with respect to said lands, disclosed the history above related, Will Taylor instituted the present suit, an action in jactitation or slander of title, against Thelma Turner, Lincoln and Schaff. He alleged that Thelma Turner was slandering his title to said property by claiming to be the fee simple owner of an undivided one-twelfth (¥12) interest therein, less the minerals. He alleged that Lincoln and Schaff were slandering his title by asserting ownership of the minerals and mineral rights described in the instruments running to them, respectively, and by having the same registered in the conveyance records of Claiborne Parish.
Plaintiff prayed “that in due course each of the defendants be ordered to either disclaim any title whatsoever to said property or to assert herein such rights as he may have against said property.” He also alleged in an amended petition that both Lincoln and Schaff well know that they have no legal interest in the minerals they are presently claiming and, therefore, are acting maliciously in so doing. Judgment for damages against them in the sum of $1,000.00' is prayed.
Thelma Turner did not answer the suit. As to her, issue was joined by judgment by default. Defendants, Lincoln and Schaff, deny all of the material allegations of fact and legal conclusions advanced by plaintiff as a basis of his action. They admit that Thelma Turner is claiming to own an undivided one-twelfth (¥12) interest in and to said lands; they admit that each of them owns and is asserting ownership to an undivided one-twenty-fourth (¥24) interest in the minerals and mineral rights described in and by virtue of the instruments of conveyance to them, respectively, •mentioned in plaintiff’s petition. These defendants, in the alternative, plead that *109 should it be found and held that they did not each own indefeasible title to an undivided one-twent-y-fourth (%t) interest in the minerals and mineral rights herein described, through and by virtue of said conveyances to them, in that event, they allege that they made the purchases in good faith, relying upon the public records of Claiborne Parish, and that: “Will Taylor, having recited by authentic act in the deed from Cleveland Robertson to Will Taylor, referred to in paragraph 9(a) above, that he was married to Thelma Glover and having recorded and allowed same to remain on the Conveyance Records of Claiborne Parish, Louisiana, unchallenged until the filing of this suit and having, subsequent to the date of said deed, instituted suit for divorce and obtained divorce by judgment of this honorable court of date February 12, 1943, thereby dissolving the community of acquets and gains between the said Will Taylor and Thelma Taylor, nee Glover, is estopped from denying or attacking the title of these defendants acquired through Thelma Glover, as alleged in paragraph 9 above, and these defendants W. W. Lincoln and Bryon H. Schaff especially plead estoppel against Will Taylor, plaintiff herein, from attacking or denying their title to a %4th mineral interest each in and to the whole of the above described property.”
Defendants pray in keeping with their pleadings. Their answer converts the suit into a petitory action wherein they carried the burden of proof.
Plaintiff’s demands were rejected as to defendants Lincoln and Schaff. There was judgment in their favor recognizing and decreeing each of them to own an undivided one-twenty-fourth (tyi) interest in and to the minerals on, in, under and that may be produced from the lands in question.
According to the Court minutes, plaintiff was given judgment against Thelma Turner but it does not appear that formal judgment has been signed. Plaintiff appealed from the judgment in favor of Lincoln and Schaff.
It is quite clear that the lower Court sustained the plea of estoppel or else it would not have rendered judgment against Thelma Turner as reflected from the minutes. , .
The record establishes beyond any doubt that when plaintiff acquired the one-sixth (%) interest in the lands from Cleveland Robertson on December 23, 1937, he was not the husband of Thelma Glover and that being described in the deed as her husband was wholly untrue. She did not become his wife until some years later.
One who examined the public records of -Claiborne Parish, read the deed to plaintiff, and observed that Thelma Glover was described therein as his wife, and then found that they were thereafter divorced, would naturally conclude that she owned a one-twelfth (%2) interest in the land described in the deed to plaintiff at dissolution of the marriage. But, had the examination been complete it would also have disclosed that plaintiff had previously married Millie A. Davis, from whom he had been divorced after said purchase and also that plaintiff’s marriage to Thelma Glover occurred- subsequent to said purchase.
The pivotal question posed by the record is: As regards the . interest of Lincoln and Schaff, is plaintiff estopped to contradict the descriptive reference to Thelma Glover, as being his wife, in the deed from Cleveland Robertson?
Under Act No. 122 of 1908 the Notary Public who passes a deed or mortgage affecting real property is required to give therein the marital status of each party. As a rule, of course, the information necessary to meet the requirements of this act is acquired from the parties. The act, in this respect, imposes no duty upon them. If this descriptive information is omitted from the instrument its validity to no extent is affected thereby.
It is an experience common to all examiners of land titles, that after the lapse of many years from date of an instrument, ofttimes it is quite difficult to ascertain the marital status of the parties thereto. In order to measurably overcome this difficulty the Legislature passed the act. The incorporation of the data in an instrument *110 creates a rebuttable presumption of its correctness, but it forms no essential or sacramental part thereof. Fifty years thereafter the presumption will be much stronger.
In the present case, the Notary was not called as a witness. From whom he got the data about Will Taylor’s marital status, the record does not disclose. Taylor is a member of the colored race, barely literate, and his testimony reveals him to be of below average mentality. It is not made clear that he knew, when he signed the deed, his marital status was incorrectly stated therein. He admits, however, that soon after the act was recorded he did learn of the misstatement.
Estoppels are of three kinds: (1) By record; (2) by deed; and (3) by matter in pais. If the facts of the present case warrant placing it in either classification, it will fall in number two, or “by deed”. We have most serious doubts that the law pertinent to either of said classifications has application to the facts of this case. If estoppel by deed is applicable, a simple statement of the fundamental law of that class will set at rest every doubt of defendants’ lack of right to recover herein. It is as follows: “An estoppel by deed is operative only between parties to the deed and their privies; strangers to the deed are not bound by, nor can they invoke, the estoppel.” 19 Am.Jur. 601, § 6.
We prefer to pitch opinion upon a different predicate. Estoppels are not favored in law. One who hopes to succeed in a litigation through the agency of such a plea is required to establish, with unusual clearness, his right so to do. Title to real estate is rarely ever lost or acquired through the plea.
The rule is almost, if not invariable that to sustain a plea of estoppel two essential facts must be well established, viz:
1. The party against whom the plea is leveled must have knowingly, orally or in writing, asserted as true, facts that were not true, and
2. The proponent of the plea must have had knowledge of said assertions and, in good faith, acted thereupon and/or changed his position with respect to the matter involved, to his loss, injury or detriment.
We do not believe defendants’ case meets the test of these two requirements.
It clearly appears that neither Lincoln nor Schaff had any knowledge whatever of the existence or registry of the deed from Cleveland Robertson unto Will Taylor, prior to time Thelma Turner signed the mineral sale, and, therefore, had no knowledge of the erroneous statement in the deed to Taylor with respect to his marital status. Nor did either have any definite information concerning the divorce suit between Thelma Glover and Taylor.
In the plea of estoppel, quoted herein-above, it is not alleged that these two defendants had any knowledge of the contents of said deed or of the divorce proceedings prior to dealing with Thelma Glover at the hospital. The plea simply states that having allowed the deed to remain of record, uncorrected, and thereafter having secured a divorce from Thelma, plaintiff is estopped to attack or deny the validity of their title to one-twenty-fourth O/24) interest each in said minerals.
We arc unable to perceive wherein defendants were misled or acted to their injury or prejudice because of the divorce proceedings or the erroneous statement in the deed with reference to Taylor’s marital status. In a case of this character constructive knowledge, if such be admitted possible, is insufficient.
It is true that the co-lessor’s agreement was procured by Lincoln by the direction of his employer’s attorney in the City of Shreveport, who advised him that Thelma had an interest in the lands, but the attorney did not impart to Lincoln or Schaff the facts or information upon which he based his opinion. The attorney did not testify in the case. They assumed that it was safe to buy the minerals from Thelma since the attorney believed she was vested with title to an interest in the lands.
Plaintiff’s demand for damages is not sustained by the testimony.
*111 Assiduous counsel for appellees have favored us with elaborate brief in’ support of their position and contentions herein, and cite and quote from many decisions having to do with pleas of estoppel, including the following, viz: Elbert v. Wallace, 26 La.Ann. 70S; Templet v. Babbitt et al., 198 La. 810, 5 So.2d 13; Lewis et al., v. King, et al., 157 La. 718, 103 So. 19; Karcher et al. v. Karcher, et al., 138 La. 288, 70 So. 228; Jordan et al. v. Marks et al., D.C., 55 F.Supp. 204; Lawrence et al. v. Joseph, La.App., 35 So.2d 885.
It is true that the syllabi in some of these cases is broad enough to cover the present case, but a careful reading of the cases at once reveals that the facts thereof and those of the case at bar are wholly dissimilar. In suits of this character, as has been said in some decisions, the outcome depends wholly upon the .peculiar facts of each case.
For the reasons herein assigned, the judgment from which appealed is annulled, avoided and reversed; the plea of estoppel is overruled; and, there is now judgment in favor of the plaintiff, Will Taylor, and against defendants, W. W. Lincoln and Bryon H. Schaff, decreeing the mineral deed by Thelma Turner to Lincoln and by Lincoln to Schaff, referred to hereinabove, to be null, void and of no effect. And, accordingly, plaintiff is recognized as the owner of the lands involved herein, to-wit: “An undivided % interest in and to the SE 54 of the SE 54 and 15 acres on the South side of the SW 54 of the SE 54 of Section 19; and the E 54 of the NE 54 and 25 acres on the North side of the NW 54 of the NE 54» North of a line drawn from the SE corner and running NW in Section 30, all in Township 22 North, Range 4 West and containing 162 acres more or less, Claiborne Parish, Louisiana.”
It is further ordered, adjudged and decreed that plaintiff’s demand for damages be and it is hereby rejected.
Appellees are cast for all costs.