CUTRER, Judge.
This appeal arises out of a suit for the balance due on three promissory notes which were secured by chattel mortgages on several items of farm equipment.
The plaintiff, International Harvester Credit Corporation (International Harvester), sued Lee L. Richard for the balance due ($86,221.76) on three promissory notes he executed as part of three credit sales of farm equipment that he entered into with plaintiff’s assignor, Rabalais Truck & Tractor Co., Inc. The notes were secured by chattel mortgages on the equipment and included an acceleration clause effective upon nonpayment of any installment and a 25% attorney’s fees provision.
In April 1982, defendant had defaulted on two of the notes and was about to default on the third note which was due on May 1, 1982. Early in April 1982, defendant notified International Harvester that he was unable to make the payments on any of the notes.
On April 20, 1982, Nicholas Caillouet of International Harvester delivered two powers of attorney forms to defendant’s wife so he could read the agreements. The defendant executed the powers of attorney on April 27, 1982 which gave International Harvester the power to sell the equipment and apply the proceeds to the balance due on the notes. International Harvester took possession of the farm equipment and brought it to Rabalais Truck & Tractor where the dealer placed the equipment upon his lot and displayed it for sale. Unfortunately, the market for farm equip *297 ment deteriorated during this time and International Harvester was unable to sell the equipment. After six months, plaintiff filed this suit to collect the amount due on the notes together with legal interest and 25% of the aggregate as attorney’s fees. Defendant answered the suit alleging that he surrendered possession of the farm equipment based on his understanding that International Harvester would grant him a full release and, as a result, plaintiff should be estopped from enforcing the balance due on the notes. The trial court ruled in favor of International Harvester and awarded it $86,221.76, legal interest and 25% attorney’s fees as prayed for.
The defendant appeals and we affirm.
Defendant asserts that he believed that, by signing the powers of attorney, he was released from any further payments on the notes. Thus, International Harvester should be estopped from collecting the balance due on the notes. We disagree.
The law of estoppel is set forth by this court in the case of Chambers v. Parochial Emp. Retirement System, 398 So.2d 102 (La.App. 3rd Cir.1981), writ den., 400 So.2d 1382 (La.1981), wherein the court held as follows:

“There are three elements of estoppel:

(1) A representation by condúct or word;

(2) A justifiable reliance on such representation by the person to whom it is made; and

(3) A change in position to one’s detriment because of the reliance.

Estoppels are not favored in our law. * * * They will be applied, however, when the evidence warrants it and when the ends of justice demand it. * * Being an equitable remedy, it must be applied with equity. * * * ” (Citations omitted.)
With these principles in mind, we look to the facts of this case to determine if the doctrine of estoppel is applicable. The first question to answer is whether the instruments signed by the defendant created an estoppel that would be a defense to this suit.
The two powers of attorney signed by the defendant were in full compliance with the provisions of LSA-C.C. art. 2985 et seq (the nature and form of mandates). The two powers of attorney were identical except for the description of the equipment in each. The relevant portion of the agreements empower International Harvester to act as defendant’s agent as follows:

“1. To sell, alienate and convey with full warranty all of my rights, title and interest in the following described property, to wit:

[Equipment described.] and is further authorized to hold the property until_before selling it as authorized in this Power of Attorney.

“2. To make payment of all indebtedness, liens, chattel mortgages or other charges against the said property in order to convey a clear title thereto. “3. This property may be sold for any price determined by the hereinabove agent, who warrants that he shall sell same for the best price obtainable and for the current market value. Said agent may deduct from the sale price sums expended to put the vehicle in saleable condition, the costs and expenses of sale, and a sales commission of not over_per cent.

All surplus remaining after the sale of said property and the payment of any debts or encumbrances thereon shall be returned by the agent to the undersigned immediately upon the consummation of said sale.”

These powers of attorney are clear and unambiguous. They simply appoint International Harvester as defendant’s agent to sell the equipment listed therein and apply the proceeds to the balance due on the notes. These documents do not purport to be a release nor could they reasonably be mistaken for one.
Defendant testified that International Harvester’s representative, Caillouet, told him that, if he would sign the instruments, *298 he would be released from payment of the debt. Caillouet denied having told defendant that the execution of the instruments would release him from any further debt. The trial court accepted the testimony of Caillouet, concluding that the transaction was fully explained to the defendant. The trial judge, in his reasons for judgment, stated as follows:
“The testimony is that the nature of the turnover transaction was fully explained. More important, there was a written document evidencing the nature of the deal. Without a reasonable belief in the extinguishment, there is no basis for estoppel.”
The trial court concluded that there was no release given by International Harvester to defendant. The record supports such a conclusion.
Defendant cites Int. Harv. Cred. Corp. v. Am. Troubleshooters, Inc., 338 So.2d 708 (La.App. 4th Cir.1976), to support his argument that his surrender of the equipment justified his belief that he was granted a full release. In that case, the defendant-company was in default on the payment of notes for a truck and a stumpcutter. The company’s president, Carmelo Graffag-nini, testified that he made an oral agreement with an International Harvester representative that he would buy another vehicle from them if he was granted a release on the truck and the stumpcutter. Believing that he would be released by the purchase of a new vehicle, he later surrendered the two pieces of equipment to International Harvester. The defendant purchased a new vehicle, yet International Harvester still filed suit to collect the unpaid balance on the truck and the stump-cutter. The court held that the surrender of the vehicles, combined with International Harvester's silence, thereafter gave defendant a reasonable belief that he was released. The facts of the case at hand are different as the defendant in this case was never promised a release in exchange for the execution of the powers of attorney.
We conclude that the trial court correctly east the defendant in judgment.
For these reasons, the judgment of the trial court is affirmed. Defendant-appellant is to pay the costs of this appeal.
AFFIRMED.