FOURNET, Justice.
 

 Plaintiff, Herbert J. Harvey, relying on the doctrine of equitable estoppel, seeks by this action to be recognized as the owner of a l/160th of the mineral rights and a l/20th royalty interest in and to a certain 200-acre tract of land lying in the East half of Section 29, T. 8 S., R. 11 E., of Iberville Parish, as against the record owner thereof.
 

 For cause of action the plaintiff alleges that by deed dated September IS, 1930, he acquired the property in controversy from A. N. and J. S. Simmons, who had acquired the same by an act under private signature dated June '5, 1928, executed by the defendant Dr. J. A. Richard, Jr., who in fact did not own the property, but that the record owner, Dr. J. A. Richard, Sr., is
 
 *102
 
 estopped from contesting that plaintiff’s authors in title (A. N. and J. S. Simmons) acquired a valid and legal title to the property described in the deed for the reason that he joined in the act of sale of his property by attesting the act as a witness and by executing the affidavit proving the signature of his son and co-defendant as the grantor, with full knowledge of these facts which were withheld and concealed from the plaintiff. The Louisiana Crusader, Inc., the lessee developing the property, was also made a party to the suit.
 

 Exceptions of no cause and no right of action were filed by the Richard defendants and an exception of nonjoinder of parties defendant by the lessee, all of which were overruled by the trial judge. On the merits, Dr. J. A. Richard, Sr., answered denying that he knew he was witnessing a transfer of his own property when he attested the act of June 5, 1928, and also denying that he had ever authorized anyone to sell the same. In his answer, Dr. J. A. Richard, Jr., not only denied having knowledge that his father’s property was described in the act executed by him on June 5, 1928, but he further averred that he intended by the said act to transfer to A. N. and J. S. Simmons a royalty interest in lands owned by him in a different section of Iberville Parish. The Louisiana Crusader, Inc., answered filing a general denial and calling the party from whom it acquired the lease.in warranty.
 

 An intervention and third opposition was filed by the wife of Dr. J. A. Richard, Sr., in which she sought to have a mortgage held by her and given in security of certain dotal and paraphernal funds turned over to her husband recognized as outranking the plaintiff’s claim, in the event he was successful in his suit. To this petition the plaintiff pleaded the prescription of ten years liberandi causa.
 

 The plaintiff is prosecuting this appeal from a judgment rejecting his demand.
 

 In this court the Richard defendants are re-urging their exceptions of no cause and no right of action. The basis of these exceptions being that the plaintiff did not allege in his petition that at the time Dr. J. A. Richard, Sr., attested the act as a witness he knew that his property was described in the act, they are without merits since it is alleged in the petition that both of the Richard defendants “knew the true state of affairs and deliberately suppressed and concealed all knowledge as to them.”
 

 The defendants, on the trial of the case, objected to all of the testimony sought to be introduced by the plaintiff on the ground that it was irrelevant in that it was an attempt to vary and contradict, by parol evidence, a written instrument dealing with immovable property that was a matter of public record, contrary to the provisions of the Revised Civil Code and the jurisprudence of this state.
 

 “The authorities are not agreed in respect of the question whether the knowledge of a party respecting the purport and effect of an instrument may be presumed from the sole fact of his having attested it. Some of the earlier English cases and a few American jurisdictions have taken
 
 *104
 
 the position that such knowledge may be presumed from the sole fact of attestation. The earlier English doctrine was subsequently disapproved by Lord Chancellor Thurlow. Moreover, the preponderance of authority, so far as the American cases are concerned, is distinctly in favor of the view that the fact of a person having attested an instrument does not preclude him from asserting a right affected by its provisions, unless it is shown by independent affirmative evidence that he was cognizant, actually or constructively, of those provisions.” 19 Am.Jur. 787, Section 132. See, also, 21 C.J. 1159, Section 162.
 

 The Louisiana jurisprudence is in accordance with the weight of authority in the United States. See Brian v. Bonvillain, 52 La.Ann. 1794, 28 So. 261; Brian v. Bonvillain, 111 La. 441, 35 So. 632; and Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855.
 

 In the first case the court held, as expressed in. its syllabus, that
 
 the recording of an act
 
 in which third parties contracted with each other with reference to the rights
 
 in which an attesting witness might have an interest “does not per. se convey constructive knowledge to the general public of any personal interest of the witnesses in the recitals of the act and its
 
 subject-matter." In the latter case [152 La. 190, 92 So. 856], the court held that
 
 “Signing leases
 
 from defendants
 
 as witnesses,
 
 assisting in obtaining such leases, or holding one of them in escrow pending an examination into the title,
 
 did not estop plaintiffs to assert title to part of the land, where they did not know or realize that the leases inchtded land in which they had an
 
 interest.” (From the syllabus.) (All italics ours.)
 

 “The sale of a thing belonging to another person is null * * *” (Article 24'52 of the Revised Civil Code), and “It is axiomatic under the law and jurisprudence of this state that parol evidence is inadmissible to create a title in one who never owned the property * * *” (Ceromi v. Harris, 187 La. 701, 175 So. 462, 464, and the authorities therein cited), except where the record owner confesses when interrogated under oath, that the property belongs to the claimant, and, in those instances, only when actual delivery of the property has been made to the claimant. Articles 2275, etc., of the Revised Civil Code. See, also, Bach v. Hall, 3 La. 116; Hagan v. Hart, 6 Rob. 427; Bauduc v. Conrey, 10 Rob. 466; Marionneaux v. Edwards, 4 La.Ann. 103; Heiss v. Cronan, 12 La.Ann. 213; Wright-Blodgett Co. v. Elms, 106 La. 150, 30 So. 311; Ruth v. Buwe, 185 La. 204, 168 So. 776; 2 L.L.R. 387; and 3 L.L.R. 427.
 

 The cases holding that estoppels are not favored by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine. Heirs of Wood v. Nicholls, 33 La.Ann. 744; Thomas v. Blair, 111 La. 678, 35 So. 811; and
 
 *106
 
 Hebert v. Champagne, 144 La. 659, 81 So. 217.
 

 As previously stated, the plea of estoppel in this case is based on the allegation that the defendant Dr. J. A. Richard, Sr., in .attesting the act executed by his son had knowledge of the fact that his property was being transferred to plaintiff’s ancestors in title and that he deliberately suppressed and concealed his knowledge of these facts from them, causing them to act to their prejudice.
 

 It is true that under the application of the doctrine of equitable estoppel an exception to the rule that the sale of a thing belonging to another is null has been developed in our jurisprudence in certain cases where a person stands by and permits his property to be sold. However, as was pointed out in the case of Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604, quoting the following excerpts from Ruling Case Law, Corpus Juris, and Cyc., “Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. * * * But to effect an estoppel by silence it must also appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead, or at least a willingness that others should be deceived, and that the other party was misled by his attitude.” 10 R.C.L. 692, Section 21. “Mere silence of itself will not raise an estoppel. To make the silence of the party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak. And it is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence.” 21 C.J. 1150, Section 154.
 
 “As a corollary
 
 to the proposition that
 
 the party setting up an estoppel
 
 must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is as a general rule essential that the former
 
 should not only have been destitute of knowledge of the real facts as to the matter, in
 
 controversy,
 
 but should have also been without convenient or ready means of acquiring such knowledge. A
 
 public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information.” 16 Cyc. 738, 740. (All italics are ours.)
 

 The record in this case sustains the findings of the trial judge that: “The evidence shows that in relation to the said instrument dated June '5, 1928, in which the said Dr. J. A. Richard, Jr., appears as grantor, as aforesaid, J. S. Simmons .alone participated, individually and on behalf of his father A. N. Simmons. It is also observed that especially as to the act dated Sept. 15, 1930, purporting to be a transfer of mineral and royalty interests on property described as being in the East half of Section 20 (not section 29), Twp. 8 S. R. 11 East, etc., from J. S. and A. N. Simmons to H. J. Harvey, the said A. N. Simmons appeared alone acting for himself
 
 *108
 
 and on behalf of his son J. S. Simmons. And it also appears that the said H. J. Harvey had no idea whatever that Simmons and Simmons had not purchased from a record owner and that he relied merely on the assurance of Mr. Simmons ‘that the title was O. K.’ ”
 

 Other than himself, the plaintiff’s only witness was J. S. Simmons, one of his authors in title, who was an attorney practicing in Plaquemine doing abstract work for the Gulf Refining Company at the time the deed of June 5, 1928, was executed. Mr. Simmons testified that this instrument by which he and his father acquired the property in controversy was prepared by him (without an examination of the record) in his office at the request of Dr. J. A. Richard, Sr., and, when completed, was handed to the elder Richard with the request that he have his son sign the same and that he (Dr. J. A. Richard, Sr.) attest and verify it.
 

 Simmons’ testimony that the act was prepared at the request and under the supervision of Dr. J. A. Richard, Sr., is denied by both of the Richards, who testified that the act was brought to their dental office already prepared by Simmons, in accordance with an agreement Dr. J. A. Richard, Jr., had with Simmons for the transfer of certain royalties owned by him, other than those here in controversy, and that it was signed by Dr. J. A. Richard Jr., as the grantor and verified and attested by Dr. J. A. Richard, Sr., at the request of Simmons, neither of the Richards reading it or knowing that the act so executed -contained a description of the property' of which the elder Richard was the record owner.
 

 It is obvious from an analysis of this testimony that there is no dispute about the fact that the instrument was prepared by J. S. Simmons and that the attestation and verification of the same by Dr. J. A. Richard Sr., was at the request of Simmons. The only pertinent matter that is in dispute is whether or not the elder Richard knew that he was attesting an instrument that purported to convey his property under his son’s signature.
 

 The only relevant evidence throwing any light on this phase of the case, other than as hereinabove pointed out, is that offered by the witness Simmons. In his testimony he said that he had made no examination of the records before preparing the instrument but that he had relied on his “impression * * * from representations made to me by Doctor Richard, Senior.” He does not state what these representations made to him by the elder doctor were; nor does he enlighten us as to the manner in which he was misled or deceived by the acts of Dr. J. A. Richard, Sr., in witnessing and verifying the instruments.
 

 We are therefore,of the opinion that the plaintiff has not only failed to carry his burden of proving that Dr. J. A. Richard, Sr., in attesting the deed of June S, 1928, had any knowledge of the fact that a description of his property was included therein but that he has also failed to prove that plaintiff’s ancestors in title were misled in any way by any of the
 
 *110
 
 acts of Dr. J. A. Richard, Sr., and induced thereby to act to their prejudice.
 

 Counsel for plaintiff is now arguing before this court, however, a matter not pleaded in his petition as a basis for his plea of estoppel, that is, that Dr. J. A. Richard, Sr., transferred certain property into his son’s name for convenience only and that his (plaintiff’s) ancestors in title believed that the royalty and mineral interest acquired by them under the deed of June 5, 1928, rested on property so transferred. In support of this contention counsel sought to introduce in the lower court certain evidence, to which the defendants objected, tending to show (1) that the true consideration of the deed of June 5, 1928, was not the $360 in cash recited therein, but was, in fact a legal fee owed to the elder Simmons by Dr. J. A. Richard, Sr., and (2) that Dr. J. A. Richard, Jr., was only a “nominal” party in the transaction of June 5, 1928, as corroborated by three documents executed by the two Richards in 1927: (a) One dated March 15 and purporting to be a sale by the senior Richard to his son of a fourth interest in 168 acres of land in Township 9 of Iberville Parish; (b) another dated May 2, wherein Dr. J. A. Richard, Sr., sold to his son all of his interest in a lot situated in T. 9 S., R. 11 E., and his interest in Sec. 61 of T. 9 S., R. 10 E., both in Iberville Parish; and (c) the last dated May 16 wherein Dr. J. A. Richard, Sr., sold to his son two tracts of land containing 160.23 acres of land in Township 9 of Iberville Parish.
 

 It appears, however, that in plaintiff’s motion filed in the lower court for the reopening of the case for the introduction of the documents above referred to and “such other proof as the Court may deem pertinent and relevant,” he. declared the purpose of this evidence was to impeach the testimony of the junior Richard and to corroborate that of the witness Simmons. In arguing this motion before the lower court, as reflected by plaintiff’s brief filed in support thereof, he
 
 limited
 
 his request for the reopening of the case to the introduction of the three documents referred to, stating that they were necessary in order to reinforce the testimony of the witness Simmons.
 

 It would be a useless and vain thing to order this case remanded for the purpose of introducing these three deeds, since they have been made a part of the record and have been carefully read and considered by us. We find nothing in any of them to indicate that they are anything other than they appear — bona fide sales of property not in controversy here.
 

 The conclusion we have reached in this case makes it unnecessary for us to pass on the issues raised by the petition of intervention and third opposition.
 

 For the reasons assigned; the judgment of the lower court is affirmed, at appellant’s cost.