PONDER, Judge.
Plaintiffs appealed from the dismissal of their rule to show cause why defendants should not be required to execute a partial release of a collateral mortgage.
The issues are the factual findings of the trial judge and the application of the doctrines of “acquiescence by silence or inaction” and estoppel.
We affirm.
Plaintiffs are the purchasers of a lot and the notary who passed the act of sale. Defendants are Commercial Capital, Inc., First National Bank of Covington, Robert Sprehe, employee of First National Bank and a consultant for Commercial Capital, and Stephen Levee, the owner of the lot. Commercial Capital, Inc. and First National Bank have the same shareholders.
We adopt a portion of the trial judge’s reasons disclosing the events leading up to this suit:
“On December 16, 1980, Mr. Levee called Robert Sprehe to advise him that an attorney would be calling him regarding a sale of parcel 40. Mr. Levee did not advise Mr. Sprehe of any approximate amount that might be available for payment to the bank in exchange for a partial release of parcel 40 from the mortgage. Mr. Sprehe did nothing further in connection with this matter, and the act of sale was closed on December 22, 1980. “On December 22, 1980, Mr. Sprehe was on vacation and out of the area. Mr. Richard Michalczyk was the Notary who closed the act of sale, and at 12:33 p. m. on December 22, 1980, he placed a call to Mrs. Eloise Braddock, the corporate secretary of Commercial Capital, Inc. He advised her that he would get back in touch with her regarding the net proceeds that would be available to pay the bank in exchange for the partial release. She suggested that he talk with F. W. Pearce, and at 1:43 p. m. Mr. Michalczyk spoke with Mr. Pearce by telephone. Mr. Pearce took down the information furnished him by Mr. Michalczyk and gave him the mailing address of Commercial Capital, Inc. It is clear from the testimony that no representative of Commercial Capital, Inc., agreed to accept the net proceeds of the sale in exchange for a release of parcel 40 from the mortgage. “The act of sale was closed at approximately 5:00 p. m. on December 22, 1980, and a check for $25,345.04 was mailed to Commercial Capital, Inc. The check was forwarded to Blossman and Hand, attorneys for Commercial Capital, and the closing Notary was advised by letter of January 8, 1981, that Commercial Capital had not agreed to a partial release amoünt in connection with the Levee mortgage. After negotiations aimed at obtaining the partial release failed, this suit was filed on May 22, 1981.”
Levee had a mortgage for $85,000.00 to Commercial Capital covering the lot in question and another. The $25,345.04 mentioned in the quotation was the net proceeds after payment of costs, judgments and commissions.
The trial judge held that no agreement to accept the net proceeds of the sale in exchange for a partial release had been reached. He also found no act or omission on the part of Commercial Capital, Inc., that would lead Mr. Michalczyk reasonably to believe that such an agreement had been reached.
The plaintiffs’ first two specifications of error relate to the trial court’s failure to find an agreement to accept the net proceeds of the sale in exchange for a partial release.
The testimony of the employees of Commercial Capital, Inc. was that they never agreed to the partial release in their conversations with Mr. Michalczyk. Mr. Levee’s testimony indicated that no agreement on a partial release was reached in his conversation with Mr. Sprehe. In fact, no estimated payoff figure was given by Mr. Levee.
Mr. Michalczyk testified that he spoke with Mr. Sprehe by phone on December 16th and a pay off figure of twenty-five to thirty thousand dollars was discussed. Mr. Sprehe denied that the conversation oc *13 curred and the trial court evidently believed his testimony.
The evidence did indicate that Mr. Mi-chalczyk may have assumed that the partial release had already been consented to by Commercial Capital, Inc., when he spoke with Mr. Pearce and Mrs. Braddock. However, they merely intended to gather information from which a later decision could be made. We find no error.
Plaintiff’s argument that the silence and inaction of the defendants resulted in an implied consent is also without merit. La.C.C.Art. 1817.[1] In cases where the law does not expressly create a legal presumption of consent from certain facts, the judge has wide discretion to determine if consent is to be implied from the particular circumstance of the case. La.C.C.Art. 1818;[2] Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979). We find no error.
Plaintiff’s argument of estoppel is also without merit. The plaintiffs have not established sufficient evidence of 1) a representation by action or word, 2) a reliance on the representation that was justifiable, two of the elements of equitable estoppel. See Duthu v. Allements’ Roberson Machine Works, Inc., 393 So.2d 184 (La.App. 1st Cir. 1980). We find no error.
For these reasons, the trial court’s judgment is affirmed and costs are assessed to the plaintiff.
AFFIRMED.

. La.C.C.Art. 1817:
“Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if, after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other.”

. La.C.C.Art. 1818:
“Where the law does not create a legal presumption of consent from certain facts, then, as in the case of other simple presumptions, it must be left to the discretion of the judge, whether assent is to be implied from them or not.”